**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**April 30, 2012**

# In the Court of Appeals of Georgia

A12A0026. DRYDEN v. THE STATE.

MCFADDEN, Judge.

This is the second appearance of this case before us. Chanju Dryden now appeals after a second trial from convictions for aggravated assault, reckless conduct and serious injury by vehicle. He argues that the trial court erred by reading the entire indictment – including certain charges that already had been resolved – to the jury panel prior to selection; that the court erred in admitting similar transaction and res gestae evidence; that the verdicts for aggravated assault and serious injury by vehicle were mutually exclusive; that double jeopardy principles barred his re-indictment; that the trial court erred in failing to instruct the jury on the defense of accident; and that the court erred by refusing to allow him to introduce impeachment evidence. We hold that Dryden has not shown that he was harmed by the trial court's reading the

entire indictment to the potential jurors; the trial court did not err in admitting similar transaction and res gestae evidence; the verdicts were not mutually exclusive; double jeopardy did not bar Dryden's re-indictment; the court did not err in refusing to instruct the jury on accident; and the evidence Dryden sought to introduce was not relevant. We therefore affirm Dryden's convictions.

In 2006, Dryden was indicted for aggravated battery, aggravated assault on a peace officer, serious injury by vehicle based upon reckless driving, possession of marijuana with intent to distribute, abandonment of a controlled substance, reckless driving, obstructing an officer and a stop sign violation. The charges arose from a controlled marijuana buy and from Dryden's attempt to flee. He entered guilty pleas to the charges of possession of marijuana with intent to distribute, abandonment of a controlled substance and running a stop sign. A jury found Dryden guilty of aggravated assault on a peace officer, serious injury by vehicle based upon reckless driving, reckless driving and obstructing an officer. The trial court merged the convictions for reckless driving and serious injury by vehicle based upon reckless driving. We affirmed Dryden's convictions, *Dryden v. State*, 292 Ga. App. 467 (665 SE2d 341) (2008), but our Supreme Court reversed the convictions for aggravated assault on a peace officer and serious injury by vehicle based upon reckless driving,

2

"[f]inding that the verdicts of guilt for the two crimes must be determined mutually exclusive in this case." *Dryden v. State*, 285 Ga. 281 (676 SE2d 175) (2009).

The state re-indicted Dryden in 2009, this time charging him with two counts of aggravated assault on a peace officer, serious injury by vehicle based upon reckless driving, and reckless driving. It also indicted him for the three charges to which Dryden had pled guilty and which he had not appealed (possession of marijuana with intent to distribute, abandonment of a controlled substance and running a stop sign) and for obstructing an officer, which we had affirmed on appeal and which the Supreme Court did not address.

Dryden filed motions to dismiss and pleas in bar, which the trial court denied. The court did rule that the sentences on the charges of possession of marijuana with intent to distribute, abandonment of a controlled substance, obstructing an officer, and the stop sign violation would be the sentences imposed during the first proceeding, thereby effectively barring their retrial.

The case proceeded to trial, and the jury returned a guilty verdict of aggravated assault on Officer Mark Thomason, reckless conduct as a lesser offense of the aggravated assault on Officer Kenny Neece, and serous injury by vehicle of Officer

3

Thomason. After the trial court denied Dryden's motion for new trial, he filed this appeal.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence shows that, on January 18, 2006, using an informant, the police arranged a controlled buy of marijuana from Dryden. The informant and an undercover officer drove to a gas station to meet Dryden. Seven other officers were involved in the buy: four officers, including victims Mark Thomason and Kenny Neece, were in an SUV and three were in a pickup truck. The officers headed toward the gas station where the buy was to occur, but remained hidden. Dryden arrived, and the informant got into his car. The officer driving the pickup truck signaled the takedown.

The officers tried to block one exit of the gas station parking lot with the SUV, which had its lights flashing, and a second exit with the pickup truck. Dryden began trying to back out, hitting the undercover officer's vehicle behind him. Dryden pulled forward and stopped in front of the SUV. Believing that Dryden's car was blocked in, Thomason and Neece exited the SUV. As Neece came around the SUV toward the driver's side of Dryden's car, Dryden started driving the car straight at him, while maintaining eye contact, causing him to jump back and run. This left open an exit

4

from the parking lot, but instead of exiting, Dryden changed direction and drove toward Thomason.

As Dryden came toward him, Thomason used his hand to push away from Dryden's car, but Dryden continued to accelerate toward him, forcing him to back up. Thomason drew his gun, intending to shoot Dryden to stop him. As Thomason fired his gun, Dryden attempted to flee the scene, hitting Thomason with his car, pinning him against the stopped pickup truck and crushing his leg between the two vehicles. Dryden then fled the parking lot.

1.     Dryden argues that the state should not have re-indicted him for offenses he had already resolved and that the court erred by reading the entire indictment – including the charges that had been resolved – to the jury panel prior to selection. Dryden unsuccessfully moved for a new panel from which to select jurors.

We do not reach Dryden's argument that the state should not have been permitted to re-indictl;k;'lk;l him for offenses that had already been resolved, because that argument does not identify an error by the trial court. "This [c]ourt is a court of review for the correction of errors made by the trial court. Here there is no ruling to review." *Jett v. State*, 246 Ga. App. 429, 430 (2) (540 SE2d 209) (2000).

5

Dryden does complain that the trial court erred in reading the entire indictment to the jury panel. But he has not shown harm. The trial court read the entire indictment to the jury panel before the parties struck the jury. Once the jurors had been selected, the court expressly instructed them that only the first three counts were on trial. In her closing instructions, the trial court reiterated that the jurors were only to consider the three charges. And, having elected to send the indictment out with the jury, the trial court, with the consent of Dryden's counsel, sent only the portion of the indictment listing the three charges on trial. So the jury knew that Dryden was on trial for only the three charges.

Moreover as discussed in Division 4, the state was entitled to present evidence of the entire transaction. It did so, including testimony about the conduct underlying the charges that had been resolved.

Dryden therefore has not shown harmful error. *Foster v. State*, 230 Ga. 666, 668 (4) (198 SE2d 847) (1973). "[I]t is axiomatic that harm as well as error must be shown to authorize a reversal by this court." (Citation omitted.) *Zinnamon v. State*, 261 Ga. App. 170, 174 (2) (b) (582 SE2d 146) (2003). See also *Kersey v. State*, 243 Ga. App. 689, 692 (2) (534 SE2d 428) (2000) (pretermitting whether trial court should have redacted indictment of charge to which defendant had already pled

6

guilty, defendant failed to show prejudice because officer was entitled to testify about that charge to explain his conduct).

2.   Dryden argues that the court erred in admitting similar transaction evidence. "A trial court's decision to admit similar transaction evidence will not be disturbed absent an abuse of discretion." (Citation omitted.) *Moore v. State*, 288 Ga. 187, 190 (3) (702 SE2d 176) (2010). The trial court admitted, as similar transaction evidence, testimony about an incident that occurred in January 1995. In that incident, police officers tried to stop Dryden's car, but he refused to pull over. Instead, he accelerated for a quarter mile, jumped out of his moving car, and ran to a family member's house. The officers found him trying to crawl into the attic, and he struggled with the officers when they pulled him down. It also admitted, as a similar transaction, evidence that in 2004, Dryden fled when agents tried to pull him over shortly after an undercover buy of marijuana. The trial court admitted the similar transactions because they showed Dryden's intent to avoid apprehension at any cost.

Dryden argues that the similar transaction evidence was not similar to the charges for which he was on trial. On the contrary, the charges for which Dryden was on trial all stemmed from his fleeing from officers who were trying to stop him, just as the similar transactions involved Dryden fleeing from officers who were trying to

7

stop him. "[W]hen similar transaction evidence is used to show bent of mind, course of conduct, motive or intent, a lesser degree of similarity is required than when such evidence is introduced to prove identity." (Citation and punctuation omitted.) *Barnes v. State*, 287 Ga. 423, 426 (3) (696 SE2d 629) (2010). The trial court did not abuse its discretion in admitting the similar transaction evidence. *Moore v. State*, 288 Ga. at 190 (3). Cf. *Mangum v. State*, 308 Ga. App. 84, 87-88 (2) (706 SE2d 612) (2011); *Evans v. State*, 298 Ga. App. 505, 507 (1) (680 SE2d 446) (2009).

3. (a) Dryden argues that the convictions for serious injury by vehicle and aggravated assault on Officer Thomason are factually mutually exclusive. He points out that one count requires no injury while the other count requires an injury. Therefore, he argues, the jury could not convict on both counts. But as the two counts arise out of distinct acts, the argument is without merit.

"Verdicts are mutually exclusive where a guilty verdict on one count logically excludes a finding of guilt on the other." (Citations and punctuation omitted). *Jackson v. State*, 276 Ga. 408, 410 (2) (577 SE2d 570) (2003). This can occur when, based on the offenses, the verdict reflects that "the jury, in order to find the defendant guilty on both counts, necessarily reached two positive findings of fact that cannot logically mutually exist." (Citation and punctuation omitted). Id.

8

The state charged Dryden with committing aggravated assault on Thomason "by placing said agent in reasonable apprehension of immediately receiving a violent injury by driving his vehicle toward said agent." It charged Dryden with serious injury by vehicle by injuring Thomason's leg when he "reverse[d] his direction of travel on more than one occasion with numerous vehicles and officers present and [fled] the parking lot at a high rate of speed in a reckless disregard for the safety of persons and property." The evidence supported verdicts on both charges: Dryden placed Thomason in fear of receiving an injury by intentionally driving his vehicle at him, and then Dryden injured Thomason in the course of his recklessly fleeing the scene. The charges therefore were not factually mutually exclusive.

(b)     As an alternate basis for this enumeration of error, Dryden appears to return to the argument that persuaded our Supreme Court to reverse: that the verdicts are mutually exclusive because, one count requires negligence while the other requires intentional conduct. But that error was cured on remand.

In its opinion reversing Dryden's convictions, the Supreme Court ruled that it could not overlook the possibility that the verdicts were mutually exclusive because, as the indictment was worded, the jury could have found Dryden guilty of both negligent and intentional conduct *at the same time*. Specifically, the indictment did

9

not specify whether the aggravated assault was committed by attempting to commit a violent injury to Thomason under OCGA § 16-5-20 (a) (1), or by committing an act that placed Thomason in reasonable apprehension of immediately receiving a violent injury under OCGA § 16-5-20 (a) (2). *Dryden*, 285 Ga. at 282-283. The court held that:

> A verdict of guilty as to aggravated assault based on OCGA § 16-5-20 (a) (1) requires a finding of an intentional infliction of injury, which *precludes* the element of criminal negligence in reckless conduct. A verdict of guilt predicated on OCGA § 16-5-20 (a) (2) does not. Accordingly, a verdict of guilt as to aggravated assault is mutually exclusive with a verdict of guilt as to serious injury by vehicle predicated on reckless driving, if the aggravated assault is based on "[a]ttempt[ing] to commit a violent injury to the person of another" under OCGA § 16-5-20 (a) (1).

(Citation and punctuation omitted; emphasis in original). *Dryden*, 285 Ga. at 282. The court ruled that the jury could have found "that Dryden intentionally attempted to commit a violent injury to Thomason and found him guilty of aggravated assault by applying OCGA § 16-5-20 (a) (1)" and also could have found that Dryden negligently caused serious injury by committing reckless driving. *Dryden*, 285 Ga. at 284.

10

On remand, the state avoided this problem by refining the language of the count charging aggravated assault of Thomason, specifying that Dryden assaulted Thomason with a motor vehicle "by placing [him] in reasonable apprehension of immediately receiving a violent injury by driving his vehicle toward [him]." Under the new indictment, in order to convict for the aggravated assault of Thomason, the jury was required to find that Dryden intentionally drove his car toward Thomason, thereby placing him in reasonable apprehension of immediately receiving a violent injury, which did not preclude the element of criminal negligence in reckless conduct. *Dryden*, 285 Ga. at 282 ("A verdict of guilt predicated on OCGA § 16-5-20 (a) (2) does not" preclude the element of criminal negligence in reckless conduct.) (citation omitted).

(c)    Although his argument is unclear, Dryden also seems to adopt an argument to which the Supreme Court alluded in footnote two of its opinion. The court wrote that, because it was reversing the conviction of serious injury by vehicle through reckless driving on other grounds, there was no "need [to] address the Court of Appeals' conclusion that it was Dryden's actions *after* injuring Thomason that support[ed] a finding of injuring him" by driving recklessly. (Emphasis supplied.) *Dryden*, 285 Ga. at 283 n. 2. But on retrial the state's evidence was fortified against

11

that argument. Douglas Matthews, one of the officers in the SUV, testified that the collision in which Thomason's leg was crushed occurred as Dryden was attempting to flee, not before he was attempting to flee.

4.    Dryden argues that the admission of evidence of his activities after the car collision was unfairly prejudicial. Specifically, he challenges the admission of evidence that when he fled the gas station, he ran a stop sign, hit a pole, jumped out of the car, told his passenger to throw out the marijuana, and hid in a bedroom closet in a nearby residence.

> [T]he state is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. . . . Acts and circumstances forming a part or continuation of the main transaction are admissible as res gestae and it does not matter that the act is another criminal offense.

(Citations and punctuation omitted). *Horner v. State*, 257 Ga. App. 12, 13 (1) (570 SE29 94) (2002). The trial court did not err by allowing the state to present evidence of the entire transaction.

5.    Dryden argues that the retrial of the aggravated assault on Thomason was barred by res judicata, successive prosecution, and collateral estoppel. Essentially, he

12

argues that the prohibition against double jeopardy barred the state from re-indicting him with new language for the aggravated assault of Officer Thomason. But there was no bar to re-indictment and to retrial in this case, nor was there a bar here to the use of different language in the new indictment.

> The prohibition against double jeopardy in both the United States and Georgia Constitutions, among other things, protects against a second prosecution for the same offense after acquittal or conviction. *Roberts v. State*, 280 Ga. App. 672, 673 (634 SE2d 790) (2006); U. S. Const. Amend. 5; Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII. OCGA §§ 16-1-6, 16-1-7, and 16-1-8 also provide limitations on multiple prosecutions, convictions, and punishments for the same criminal conduct. Because the Georgia Code expands the proscription of double jeopardy beyond that provided for in the United States and Georgia Constitutions, we look to the foregoing Code sections to resolve issues of double jeopardy.

(Citations and punctuation omitted.) *Phillips v. State*, 298 Ga. App. 520, 521 (1) (680 SE2d 424) (2009). OCGA § 16-1-8 (a) (1) provides that "[a] prosecution is barred if the accused was formerly prosecuted for the same crime based upon the same material facts, if such former prosecution . . . [r]esulted in either a conviction or acquittal. . . ." However, OCGA § 16-1-8 (d) (2) provides an exception to the rule, stating, in relevant part, that

13

[a] prosecution is not barred within the meaning of [OCGA § 16-1-8 (a) (1)] if . . . [s]ubsequent proceedings resulted in the invalidation, setting aside, reversal, or vacating of the conviction, unless the accused was thereby adjudged not guilty or unless there was a finding that the evidence did not authorize the verdict.

Because the Supreme Court's reversal of our opinion affirming Dryden's convictions amounted to neither an adjudication of not guilty nor a finding that the evidence did not authorize the verdict, Dryden's re-indictment and retrial on the aggravated assault charge were not barred. *Phillips*, 298 Ga. App. at 521 (1). Nor did double jeopardy principles bar the state from re-wording the indictment. See *Casillas v. State*, 267 Ga. 541, 542 (1) (480 SE2d 571) (1997) (finding that state was not barred from trying defendant on a new indictment charging involuntary manslaughter in two separate counts simply because the original indictment charged him with that same crime in a single count); *McCrary v. State*, 254 Ga. 382, 382-382 (2) (a) (329 SE2d 473) (1985) (portion of new indictment did not violate OCGA § 16-1-7 (b) as it was merely the "re-statement of the 'same conduct' as that identified in the original indictment, the only difference being the ascription to that conduct in the later indictment of being committed" in a particular way).

6. Dryden argues that the trial court erred by failing to give his requested charge on accident. The request was founded on OCGA § 16-2-2, which provides, "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." But, a charge on accident is not authorized when the "accident" occurs as the defendant is driving recklessly. *Black v. State*, 222 Ga. App. 80, 81-82 (2) (473 SE2d 186) (1996); *Helton v. State*, 216 Ga. App. 748, 748-479 (455 SE2d 848) (1995) (defendant who was driving recklessly to evade police was not entitled to a charge on accident).

7. Dryden argues that the court erred by refusing to allow him to introduce certain evidence to impeach one of the officers involved in the incident, Agent Doug Matthews, who had been in the SUV. The allegedly impeaching evidence was that an assistant district attorney had suggested that Dryden's former counsel might want to explore whether Matthews saw the pickup truck or Dryden's car hit Officer Thomason first. The trial court excluded the evidence on the ground that it was not proper impeachment evidence.

Agent Matthews testified that he "could not tell" whether Dryden's car or the pickup truck hit Agent Thomason first. "[T]here was no testimony elicited from

15

[Matthews] that would have been contradicted by" the evidence from the assistant district attorney. *Hollie v. State*, 298 Ga. App. 1, 3 (1) (679 SE2d 47) (2009). The trial court thus did not abuse its discretion in refusing to admit this as impeachment evidence. See id.

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*